And would the lawyers who are going to address us please step forward for just a minute on those segments. Good morning, Justice. Go ahead. Mr. Benton Page on behalf of Michael Wojick. Okay. Jackie Savanasini on behalf of Sandra Wojick. Okay. Mr. Page, would you like to reserve any time for rebuttal? We'll reserve five minutes, Your Honor. Okay. You each have 20 minutes. You do not need to use it if you don't need it. And you both know, I think, that this does not amplify, it only records, so keep your voices up nice and loud. You may sit down and you may proceed. Thank you, Justice. May it please the Court, we've raised three issues in our brief before this Court. The first of which is the interpretation of the party's marital settlement agreement and whether it allows for a review of maintenance and a grant of maintenance after the term for the party's unallocated support award ends. In this case, the marital settlement agreement, which on this particular issue is not a model of drafting and indicating the party's intentions, states simply that there is a 60-month unallocated family support term, at which point it states it's reviewable, does not state how the review is to be conducted, it does not state anywhere that there is to be any term for maintenance after the award expires. But it doesn't say that there's a specific period that it ends. It does say a 60-month period, you're correct, there's not a specific provision stating that the unallocated support terminates at the end of that period, it's silent on the issue. Because one of the cases that's discussed has that clearly in there, that it becomes the maintenance ends, terminates. Correct. One of the cases, I believe it's Dormer, had specifically that there was a termination and this is distinguishable from Dormer in that respect. That being said, this marital settlement agreement did have a standard provision stating that all other forms of relief that either party could obtain from the other is waived except as specifically provided in this agreement. I mean, I guess the other language that bothers me is it says it's modifiable unless one of the specific termination provisions, termination events occurs, which the 60-month is not a termination event. That is true, Justice. That being said, during the period of the unallocated support award term, that 60-month term, clearly it was reviewable or modifiable. That is undisputed. The question is, after there was no further unallocated support to modify a review, whether in fact, as Sandra did in this case, she could seek to extend or set a term for maintenance. There is no real conflict that the unallocated support includes maintenance. Clearly, an unallocated support award by its definition has to include maintenance or child support or it would not be, for example, taxable and deductible as the parties clearly intended here. So, no, you're correct. However, we have to look to the party's intention in construing this agreement, which is highlighted by the petition that Sandra filed to set maintenance in 2013. She filed a petition under Section 504, which Section 504 of the Illinois Marriage and Dissolution of Marriage Act is the section under which a party may seek to establish a maintenance award, contrasted to Section 510A5 of the Illinois Marriage and Dissolution of Marriage Act, which is the provision that a party may seek to review or modify a maintenance award. As Sandra acknowledged in her petition, unallocated support had terminated at that point, which is her language. The remainder of the settlement agreement is an indicator that this is what the parties intended, however. The fact that there's a provision for child support at the conclusion of the unallocated support award, but there's complete silence as to whether maintenance was intended or extended or considered is, again, an indication that that's what the parties intended. It is, in drafting one of these marriage settlement agreements, it's inconceivable that if you intend that someone may seek maintenance and to review maintenance at the conclusion of the term, that you would not say anything about it as this settlement agreement does not. It does not use the word maintenance once in the seven or eight paragraphs. It's providing for the unallocated support award and for child support after the unallocated support award terminated. The reasoning, if you look at paragraph 2.3 of the settlement agreement, it states that the review, the only explicit consideration for the review would be Sandra's efforts at becoming economically self-sufficient or something to that effect. Which, if you look at the circumstances underpinning the settlement agreement, it was entered into right as Sandra was finishing her master's degree and before she had commenced any work. The intention there being to allow Michael the ability to seek a review of the maintenance at some point during that five-year term. I'm sure that's what he was saying. What it expressly says is it can be reviewed any time prior to the happening of a termination event. And there was no termination event. Correct? That's what it says. I believe it says, I don't believe it says specifically the termination event, Justice. Prior to the happening of any of the termination events set forth in paragraph 2.1. You are correct, Justice. I take it back. Why would the expiration of the 60 days be a termination event? Why would not the expiration of the 60 days be a termination event? You're right. I would argue that that is a termination event in and of itself and that if there's no modification or review prior to that, then there was nothing further to. Which is why the payment ceased. Correct. Until the trial court awarded an extension of the maintenance in 2015. Except that termination event is a defined term under the MSA. Correct. Termination event under paragraph, I believe it's 2.2 is. 2.1. Excuse me. 2.1 is. This was filed two months after the termination event. And the completion was filed two months after the termination, after the expiration of the term. Correct. Or termination. I would agree with you, Justice. The second issue we raise on appeal is whether the trial court, presuming that there was a right to a review or an extension of maintenance, whether the trial court had the abuse of discretion in ordering permanent maintenance at that point. The issues primarily being whether Sandra's efforts at becoming self-sufficient economically were adequate and whether the trial court, in finding that she had rehabilitated herself, was able to nonetheless order an extension and, in this case, permanent maintenance. And this is not a rhetorical question. This is a real question. But why is his not crediting the amount she would have made as a teacher? Why does that not take care of that argument? Well, two issues there. First of all, if the judge, if the trial court found that it had to impute income to Sandra, that itself is an expression of its finding, though unstated, that she had not done what she should have done to earn the income that she could have. In other words, she hadn't met her expectations. Okay. And by imputing income, he is sort of finding that. He is exactly finding that, correct, Justice? Okay. So why does that not take care of that argument? Because we still have issues as to whether Sandra, in this case, was working only during the school year, not working year-round. She did not finish her degrees, which she could have, which I believe was undisputed, would have resulted in her earning significantly more. And she would not, by virtue of her failure to do either of those things and for quitting her job immediately before the trial, continue to get raises, continue to accrue pension benefits, and provide for any time in the future where Michael could realistically seek to end his support award, particularly in consideration of the Bernay decision, which is currently on appeal to the Supreme Court, which my reading of it certainly suggests that a spouse may almost never seek a termination of a permanent maintenance award, even at retirement. You know, it is a prejudice to someone to, in this case, Michael, not to have really the ability to seek a further review of maintenance since Sandra is effectively given a pass at having to work full-time. So by allocating, he's sort of allocating a set amount at that particular time, but it would have gone up. It's not a realistic estimate of what she really would have been able to make if she had truly maximized her earning potential. That's correct, Justice. That's correct. And these arguments were made to the trial court. Correct. Yeah. I mean, certainly there was an argument that she should be imputed, you know, the full slate of her income and that she... Because the $9 an hour wasn't what the trial court worked based it on. No, correct. And that's what she was actually making because she wasn't teaching at the time. Correct. Yeah, she was doing some substitute teaching and she was doing some tutoring, but primarily it was the $9 an hour that she was earning when the trial was had. Well, permanent maintenance would be reviewable if there's a substantive change of circumstances. Correct. It would be modifiable at that point, Michael's motion, if, of course, he ever finds out that she's earning more. Well, he was earning a whole lot less. Correct. Right now I believe he's earning about $700,000 a year. Well, yes, he was as of the year in which the case was tried, right, in 2015. I believe that was approximate, his income, which was far greater than he earned during the marriage. Go ahead, Justice. Are you aware of cases where maintenance was perhaps awarded for a shorter period of time, say a four or five-year period of time, and it was strictly maintenance and the party did not ask to have it reviewed prior to the termination? Are you aware of any cases like that? No, Justice, no, not that specific fact pattern. As we've said, there are a lot of very fact-specific cases. We've said in the first section of our argument, detailing exactly when maintenance can be reviewed and certainly it should be in every settlement agreement where there is maintenance, stating exactly how maintenance will be reviewed and the terms and conditions of that review, which is simply absent here. So would be your position that there is no Illinois case that deals with the issue where the provision for maintenance has expired and a party subsequently files a request to ask that it be reviewed  Sure, right. There is certainly the Rice case from I believe the third district that details. There's one from the second district also. That's correct. In both of those cases, which are cited in our brief, the appellate court found that because, and I believe the trial court in both those cases too, found that since the maintenance recipient had not filed for the review prior to the expiration of the maintenance term, that the court loses jurisdiction or rather does not have the ability to review maintenance any further. So how is this case different? I heard you argue that. That's why I'm asking you how it's different. No, we agree, Justice. It's like you don't argue that that was a termination event. Well, again, as Justice Mikva points out, it's not a stated termination event, so we're careful to point out it's not necessarily a termination event so much as there's no further maintenance to review or modify at that point, and the court loses, I think jurisdiction is perhaps the wrong word, but loses its ability to still consider that issue after the maintenance term has, in this case, unallocated support award term has ended. I want to ask you about interest before you run out of time, if you don't mind. Please. I'm confused by his order because it says statutory interest shall accrue effective August 6, 2013, on the balance of the retroactive award. It says that it's payable within 180 days of his February 2017 order, and my understanding of that order is whatever you don't pay within 180 days, you're going to pay interest on. Is that your understanding? That if you paid it over the 180 days, there wouldn't be any interest? No, Justice. The way the order, as I read it and as it's been construed by my client, and he's paid it, is that the entire amount of the retroactive maintenance was ordered to accrue interest from the day that Sandra filed her petition in 2013. But it says on the balance, so that's what I'm confused by. It says on the balance of the retroactive award. It says it's payable within 180 days, and then whatever doesn't get paid on the balance, it doesn't say anything that, I mean, it's confusing to me because it doesn't say from the due date of February. But the balance kept going up. The balance was the whole, and I'm trying to summon the number, the $239,400, which was ordered, and the way the trial court ordered it was that it was ordered, the entire balance of the retroactive beginning on August 6, 2013. So in other words, it began to accrue on that whole $239,400 from August 16, 2013. In other words, a 42-month period here, years before Michael could have had any idea exactly what he was going to do. I understand that. And he said, yes, in my view, as soon as your obligation ended, it should have continued at this new amount. That's effectively what the trial judge was doing. Right, not going forward. You're not disputing, you're disputing that he owes anything, but you're not disputing that if he owes anything, it would be owed back to August of 2013. You're not disputing the retroactive award itself as much as the… But you are saying, and I certainly understand this, in fact, to how could he owe interest on it? He had no idea he owed it. He read the agreement as ending his obligation. But I don't read the court's order as saying that you owe any interest if you do pay it within 180 days. You do read the order as saying that? And I'll ask your opposing counsel as well. But it says to me the balance is on what's not paid within 180 days. And maybe I'm misreading it. As I read it, Justice, it was the interest on the full balance of that $239,400 from the 2013 date forward. But that wasn't due on that date. What's that? I thought it was monthly. What was it, $5,000 a month? $5,000 and change. So it wouldn't be $230,000 on that date, it would be $5,010? Correct. If you take all the back interest, I'm sorry, all the back maintenance, the back maintenance is $239,000, and you think that what was due on February 1st, 2017, is $239,000 plus interest back to August of 2013? Is that what you're saying? Correct. Correct. The retroactive interest or the prejudgment interest is what we take issue with. Okay. You agree there's post-judgment interest on the $239,400 from February 1st, 2017? I agree that if he did not pay it within the timeframe stated, which I think was the 180 days, thank you. But from that point forward, judgment interest would be appropriate during the period from the date of the entry of the order through that 180 days. Based on the case we've cited, I believe it would be inappropriate to. . . Okay. I just don't know what the balance is, but I'll ask the opposing counsel. Yeah. I believe that's what the trial court intended. I agree it could have been probably worded more clearly. Okay. The issue, though, again, being that any prejudgment interest, we believe, is not authorized under either Section 504B or 505B-5. This wasn't a clear obligation that he had. Correct. And the statute just by itself, it only permits interest to accrue on unpaid balances at the end of each month, which did not exist prior to the entry of the maintenance order. All right. Thanks. Thank you. Thank you, Justice. Good afternoon, Your Honors. The trial court, the charges that presided over this litigation presided over the parties and the facts for years. They were in court for approximately four years. He took a lot of time to write his orders, and those orders were not in error. There was no abuse of discretion, and the trial court's order should be affirmed because the issues that were raised by Michael on review don't support reversal. Specifically with regard to the petition for maintenance and the motion to dismiss being denied, I just want to set forth that the petition to set the maintenance, one of the counsel's arguments was that there was an acknowledgment that there was a termination in the original petition to set maintenance. That, in fact, was Michael's termination of maintenance. That is actually the words that were used by him. It was not terminated by the Myrtle Settlement Agreement. The Myrtle Settlement Agreement set forth that there was a 60-month term reviewable for unallocated family support. At any time after that 60 months, that's when the review would happen. Before that point, it would be considered a petition for modification. He could have also come back in at that 61st month or 62nd month and asked for a review. What we're suggesting is that he stopped paying on his own accord. He wasn't asked, he wasn't told to stop it. He did not file a petition. Wait, you're saying he had an obligation to continue it after the 60 months? To file a petition for his own review. That's not the position you're taking to breathe. I'm confused now. I understand that, but what the court said, what the Myrtle Settlement Agreement said, the unallocated family support was reviewable upon notice and petition. That's exactly what we did. We did that. It wasn't done before the 60 months was up because that would not have been a petition for review. It would have been a petition for modification, which we were not asking for. Okay. In addition, there was no, their argument is that Michael had a right to receive maintenance and so did Sandra, but that is in fact not the case. There was no specific waiver of that right to maintenance. You agree with your opposing counsel that maintenance was part of the unallocated family support. That absolutely was part of that, absolutely, which is why on review only the maintenance was requested because Jennifer had reached the age of emancipation and child support was no longer going to be an issue. So it would be your position that he should have continued to just pay forever if no one files anything? If no one had filed, if he had filed a petition for review, it would have been. No, that's not what I said. The premise of my question is no one has filed anything. So should he just continue to pay forever? Would that be your position? The position is that that is not a termination event. So in essence, yes. You believe, even though it says he pays for 60 months, you believe he should continue to pay forever unless he files something? I believe it is. That makes no sense to me. Okay. I understand what you're saying. That makes no sense to you either. No, but what does make sense to me is that he has said that maintenance cannot be now, we cannot now set maintenance because she waited until two months after, after the unallocated support was completed, or it was terminated. It wasn't terminated. There was no termination event. So should the court still? That's a question that needs to be answered. Okay. I don't know the answer to it. I'm not sure what the answer is. But was there a termination event? The only termination events that were in the marital settlement agreement were Sandra's death, remarriage, cohabitation, and Michael's death. Those were the only termination provisions. Michael was ordered to pay for 60 months, correct? Correct. So after he's abided by the court's order for 60 months, what is he to do? He's to file a petition for review if he wanted that review, which is what I'm saying. He's not asking that he be reviewed. It's done. It's not terminated. The court has ordered him to pay for 60 months. He's paid for 60 months. There's no further court orders in place at that point. Okay. So if he stops paying, what are you saying? What I'm saying is that that is not the end of his obligation to pay. And when Sandra filed the petition for review of maintenance, the court had the authority, he had the right to be able to hear that. It did not end because she did not file that petition. In the 60th month when he stopped paying, when he terminated the family support, that didn't end his obligation under the marital settlement agreement. And you have to understand, I'm sorry, Michael also had the opportunity to insert a termination clause regarding maintenance if he chose to do so in the original judgment when they were negotiating that marital settlement agreement. And he chose not to do that either. So to penalize Sandra and say Sandra doesn't have the right to be able to seek maintenance after that, unallocated maintenance order clearly goes against what the intent of the parties was during the negotiation of the marital settlement agreement. With regard to the second issue that was put forth about the permanent maintenance being ordered, just to put a few facts out there, Sandra did rehabilitate herself in good faith. The court found that she did rehabilitate in good faith. Sandra was at an age at the time of the hearing where people who are reaching the height of their career, Sandra was beginning her career. She had lost her ability to establish that 30-year period of her career building when she was staying at home taking care of the kids and helping Michael build his career up. That's when permanent maintenance becomes something that our courts have historically and even moving forward have determined that's a permanent maintenance type of a case. She did earn her higher education career. She did in fact receive her master's in teaching and she taught for seven years after the divorce. When she made the decision to resign from the job she was at, it was because she was receiving threats of physical violence against her and the administration at the school that she worked at in Markham. She was concerned for her own safety. And she made that decision understanding that she was going to be taking a different career path, a different step in life. And she understood that when she took the job, making a lot less money than what she was making as a teacher, she was able to maintain health insurance at that job that she had with Massage Envy. She also still was substitute teaching when she could. She was still touring when she could. And she has accepted the imputation of the $46,000 a year income. What about counsel's point that that really doesn't take into account her raises, her opportunity for greater, far greater income? That was a starting salary for a teacher. She would have continued to accrue higher and higher salary. She could have, but how do we know what that would have been? There was no evidence that supported Michael's claim that she would have been making $69,108 had she continued to work. Contracts for teachers change. Those are modified every two to three years. We don't know what she would have been making. The trial court is the one that heard the testimony, found that in good faith she had done what she could to rehabilitate herself, did impute the $46,000. She is still working. She did not sit at home and eat bon-bon. She was out there working and doing what she could, maintaining the insurance that she could maintain. No matter what type of a job Sandra could have gotten, what type of a career she would have wanted to start in her mid-50s, was never going to give her the income anywhere near the income of what Michael had. Michael makes 15 times more money than what she makes. She lost 30 years of her career-building ability by helping him advance his career. There's a disparity in income here that goes even beyond what our new statute looks for with regard to maintenance for permanent maintenance cases. This is beyond that. What I suggest is that there is money here that he earned. He earned that money because she was able to stay home with those kids, take care of everything that had to be taken care of at home, and his career has skyrocketed as a result. She is trying her best, doing what she can do to maintain a job, maintain insurance for herself, and do what she can. And again, the court imputed income to her. Can you address the interest issue? Both parts of it. First, what the order says, because I read the order as it's only payable if he doesn't pay on February, within 180 days of February 1st, 2017. That's not how you read it. Do you think he owes interest on it, even if he pays it all February 1st, 2017? I'll be very honest with you. I'm a little confused by that as well. Is your client coming after him? He paid it all, right? He paid it within 180 days? Your Honor, I don't know if he's paid it yet or not. Okay. All right. So you don't have a position as to whether he owes interest if he pays it within 180 days? I do not. Okay. I do not. My only response on the issue of that is that there isn't a statute that prohibits interest. And if the trial court ordered it... But the notion of interest is that it's an obligation you knew you had. And that's true under the Interest Act. It's true under the marriage, you know... I think that the equities in this case support interest be paid. She has not received any support since June of 2013. And I believe that in order to get her back to where she should have been, had that support continued on, it's going to take interest to do that. Okay. But you agree that there's no way he could know that he had that obligation until the court ordered him to. And, in fact, the court significantly lowered the number on the motion to reconsider as to what he was owed. Well, he lowered that amount because he had failed to impute that... Well, I'm just saying there's no way that he could know, that the husband could know what he owed. So how could he pay it? Okay. The other thing, wouldn't the interest just be paid on the bail that's outstanding? Am I... So if it's $5,000 the first month, that's the bail that's outstanding, just like the reverse of a note. That's what I interpreted. So if he pays it, there's no interest. If he pays it within that period of time that was ordered in the court order, he wouldn't know the interest. Okay. So then you agree with me. There is no interest owed if he pays it at the time the court order says it's necessary. Yes. Okay. To sum up, I just want to say there was no error below, there was no abuse of the trial court's discretion, and I request that the court affirm the trial court's decision. One last question. Yes. Your opponent argues that for the first issue on whether the trial court erred in denying Osh's dismiss, their position is that the standard of review is de novo. Do you agree with that? Hmm. There. No, I don't. I think it's an abuse of discretion standard. I think that the trier of fact is the one who has the facts before it. De novo is not the review here. We have a case here where there is no termination provision. The court has already set what was there, and the review is from that point on. I don't know how else to answer that question. They're arguing that it's actually an interpretation of the narrative settlement agreement, and that's what makes it de novo. Yes. I do think it's an interpretation. I think that the interpretation, however, is clear. I think that the respondent here has attempted to find an ambiguity in the narrative settlement agreement, which is not there. There is an interpretation necessary, but if you look at the plain facts of that narrative settlement agreement, I think there's only one interpretation that there can be, and that's that there was a 60-month reviewable order that was reviewed in a timely fashion with jurisdiction of the trial court. Anything else? Thank you very much. Did you have anything? Yeah. But I agree. Yeah. It is de novo. You agree it's de novo. I agree it's de novo. Because we're interpreting a contract, right? We're interpreting a contract, and the trial court rather was ruling on the 619 motion and that also, I believe, is a de novo review. But on your second issue, it's an abuse of discretion. Correct. On whether the trial court, assuming it should have ordered maintenance at all, should have, it's an abuse of discretion standard, which I would point out, while it's certainly a high threshold to meet an appeal to abuse of discretion standard, here, for the reason I stated before, the trial court's simultaneous imputation of income to Sandra while also finding that her efforts were in good faith, while also finding she was rehabilitated, I believe was arbitrary. I would also point out that an abuse of discretion occurs where the trial court applies the wrong standard to the issue. And in this case, I believe the trial court did that when it found both that Sandra was rehabilitated but failed to terminate maintenance. A few other points, Justices. One of the issues at trial was certainly Sandra's claim that she had quit her job out of this concern of safety. She was, in fact, impeached on that point, and that her entire file from her employer at the school district was admitted evidence and it was found to be completely without any complaints or any other issues whatsoever. Now, that's really asking us to do the trial judge's job. Fair enough. We can't do it. The other issue that was raised factually is this notion that there was no evidence in the trial court, which is raised in the appellee's brief, that there was no evidence in the trial court that Sandra could continue to earn a higher income as time went by, which is not accurate. Part of that file from her employer included the union contract and the schedule of raises for the teachers, including showing by year and by education what each of the teachers would make. And that's where the $69,000 figure came from. This notion that has been raised both in the trial court and in the appellate court now, too, that because Michael is earning so much more, he was, in fact, earning about twice as much when the review hearing commenced as he was at the time of the party's divorce, that he's making so much, so therefore he should pay maintenance. And that seemed to be much of the trial court's reasoning, along with the duration of the party's marriage. It ignores the general premise that just because a spouse should or has the ability to pay maintenance, that they should not necessarily have to. And in this case, I don't believe Michael should have to. I mean, Sandra was a wealthy woman during the review based on the assets she received in the divorce for assets. During the course of just the review from the time she filed to the time that the trial court handed out its ruling, the petition had increased dramatically without receiving any support whatsoever. The trial court, I believe, just failed to give life to this agreement and failed to consider what had transpired pre-judgment in terms of the party's division of their assets and in terms of the support award that had been given at that time. We would ask justices for some ruling on this interest issue. I understand that it's, again, not perhaps the most clear provision on that interest issue, though I believe that that is how the trial court is construing it. Okay. Anything else? Thank you, Justice. This is very well briefed, very well argued, and you will hear from us shortly. Thank you very much.